UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

Jim C. Riggs,

        Plaintiff,

        vs.

Chugach Electric Association, Inc.,

        Defendant.

3:14-cv-238 JWS

**ORDER AND OPINION**

[Re: Motion at docket 11]

## I. MOTION PRESENTED

Defendant Chugach Electric Association, Inc. ("Chugach") moves for summary judgment at docket 11. Chugach's motion is supported by a memorandum found at docket 12, to which are appended numerous exhibits, and by the Affidavit of Tyler Andrews, found at docket 13. An opposition from plaintiff Jim C. Riggs ("Riggs") is found at docket 21. The response includes the Affidavit of Jim C. Riggs. Chugach replies at docket 23. Oral argument has not been requested, and oral argument would not assist the court.

## II. JURISDICTION AND BACKGROUND

Riggs was hired by Chugach in August of 2000. He worked at a power generation facility called the Beluga Power Plant ("BPP"). Riggs was a welding maintenance technician at BPP from 2006 until he was laid off in October of 2012. Chugach is a union employer. Many of its employees, including Riggs, are covered by a collective bargaining agreement ("CBA") with Local Union 1547 of the International Brotherhood of Electrical Workers ("Local 1547").[1]

Riggs filed this case in state court, and Chugach timely removed it to this court. Riggs' complaint pleads two claims against Chugach: (1) Chugach breached the CBA; and (2) Chugach discriminated against Riggs on the basis of his age in violation of AS 18.80.220(a). Riggs suggests in his briefing that this court lacks subject matter jurisdiction. The suggestion is without merit. The first claim is indisputably based on an alleged violation of the CBA, so this court has jurisdiction pursuant to § 301 of the Labor Management Relations Act ("LMRA").[2] Chugach argues that the second claim also falls within the ambit of § 301 of the LMRA; but even if the second claim is a purely state law claim as Riggs contends, this court has supplemental jurisdiction over it.[3]

BPP has been in operation for decades. In 2013, Chugach began operating a new power generation facility, the Southcentral Power Plant ("SPP"). Use of SPP reduced the operations conducted at BPP and also reduced the need for maintenance

---

[1] Copies of the CBA are found at docs. 1-2 and 12-2.

[2] 29 U.S.C. § 185(a).

[3] 28 U.S.C. § 1367(a).

workers at BPP. Chugach and Local 1547 entered a letter of agreement ("LOA") prior to commencement of operations at SPP, which made the CBA (with modifications set out in the LOA) applicable to work at SPP. The LOA also provided a procedure for BPP employees to bid on upcoming jobs at SPP. Riggs did not bid for a job at SPP.

In the meantime, Riggs' health was deteriorating. Among other things, Riggs developed emphysema, which he attributes to many years of welding and concomitant exposure to hexavalent chromium fumes. As a result, in March 2012 Riggs began asking for training as a boiler operator, but training was not offered to him. Chugach gave notice of two boiler operator vacancies at BPP in April 2012. Riggs bid on one of the positions. His bid was evaluated pursuant to the applicable provisions of the CBA, and the bid committee found that neither Riggs nor two of the other applicants had the required qualifications. Riggs also bid on another boiler operator position at BPP in May 2012. As before, the CBA provisions were followed, and the bid committee found that Riggs and three other applicants lacked the qualifications required for the position. In June, Riggs was notified that he would not be assigned to a boiler operator position.

As work shifted to SPP, Chugach gave notice to five maintenance workers at BPP, including Riggs, that their positions were being eliminated. Riggs did not have the experience in other job positions which would have allowed him to secure work by "bumping" other employees. Thus, there was no work available for Riggs. Under the CBA, Riggs had the right for one year to bid for vacancies occurring at Chugach, but he did not do so.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[8] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[9] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for

---

[4] Fed. R. Civ. P. 56(a).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Id.*

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8] *Id.* at 323.

[9] *Id.* at 323-25.

-4-

trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[11] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

## IV. DISCUSSION

### A. Breach of Contract

Riggs alleges that Chugach breached the CBA in two respects. First, Chugach's "failure and refusal to retrain plaintiff, on-the-job was a violation of the [CBA]."[13] Second, Riggs alleges that Chugach breached the CBA when it did not place him in one of the boiler operator positions for which he applied.[14]

It is obvious that resolution of the two breach-of-contract claims turns upon analysis and application of the CBA. Thus, plaintiff's breach-of-contract claims are necessarily claims made pursuant to § 301 of the LMRA and must be adjudicated accordingly.[15] The CBA includes a comprehensive grievance procedure for resolving

---

[10] *Anderson,* 477 U.S. at 248-49.

[11] *Id.* at 255.

[12] *Id.* at 248-49.

[13] Complaint, doc. 1-1 at ¶¶ 9 and 13.

[14] *Id.* at ¶¶ 10-11.

[15] *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).

-5-

any alleged violation of the CBA.[16] Riggs had a right to pursue the grievance procedure as outlined in Article 10, § 10.3 of the CBA ultimately culminating in his right to have Local 1547 take his claim to arbitration under § 10.4. Riggs did not commence the grievance process. Failure to attempt resolution by resort to a CBA's grievance procedure ordinarily forecloses litigation in court.[17] Exceptions to the bar arise when the employer has repudiated the CBA or the employee's union breaches its duty to provide the employee with fair representation in the grievance process.[18]

Riggs argues that his affidavit shows that Chugach repudiated the CBA. The affidavit does not set out evidence that Chugach repudiated the CBA. Rather, it alleges that Chugach violated the CBA. There is nothing in the affidavit suggesting Chugach had repudiated or would repudiate its obligation to comply with the grievance process in the CBA. Riggs cites *D'Amato v. Wisconsin Gas Co.*[19] to support his argument. In fact, it does not. There, the employee pointed to a breach of the CBA by the employer when it fired him as the basis for the employer's repudiation of the contract. Explaining that this was insufficient, the appellate court wrote: "But all the Company did was fire D'Amato; it took no steps that would have precluded him from grieving his dismissal. Since the Company took no steps to frustrate the processing of such a complaint,

---

[16]CBA Art. 10, doc. 12-2 at pp. 73-77.

[17]*Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1189 (9th Cir. 2001).

[18]*Vaca v. Sipes*, 386 U.S. 171, 185 (1967).

[19]760 F.2d 1474, 1488 (7th Cir. 1985).

D'Amato cannot claim this exception."[20]  Here, as in *D'Amato*, the exception based on the employer's repudiation of the contract is inapplicable.

Turning to the conduct of Local 1547, it must first be noted the union is not mentioned in Riggs' complaint,[21] much less accused of failing in its duty to fairly represent him.  Just as telling, Riggs' opposition to Chugach's motion does not respond to the argument that there is no evidence of a breach by Local 1547.  The exception for a union's failure to fairly represent the employee does not apply.

Riggs argues that his failure to exhaust the remedy in the CBA should be excused because it would have been futile to pursue that remedy.  The problem with this argument is that Riggs points to utterly nothing to support it.[22]

In sum: To pursue his contract claims in court, Riggs was obligated to pursue the contractual remedy provided by Article 10 of the CBA.  He did not do so.  No exception to the requirement is available.  Riggs' breach-of-contract claims must be dismissed.

**B. Age Discrimination**

Riggs' second claim for relief is that Chugach violated AS 18.80.220(a), which makes it an unlawful employment practice to discriminate against a person regarding the terms or conditions of his employment based on race, religion, color, national origin, age, or various enumerated disabilities.  Riggs alleges that Chugach should have trained him and hired him as a boiler operator, and that Riggs' "age was a factor in the

---

[20]*Id*.

[21]Complaint, doc. 1-1.

[22]Opposition, doc. 21 at 3.

decision not to hire him."[23] Chugach argues that Riggs' age discrimination claim is so intertwined with consideration of the terms of the CBA that the claim must be treated as a claim for breach of the CBA under § 301 of the LMRA. If that is correct, then the age discrimination claim falls for failure to pursue the CBA's grievance process as explained in the preceding section of this order.

In *Allis Chalmers Corp. v. Lueck*,[24] the Supreme Court held that a state law tort clam for breach of the implied contractual duty of good faith was pre-empted by § 301, because the state law claim could not be resolved without considering the provisions of the applicable collective-bargaining-agreement. The Court explained: "The duties imposed and rights established through the state tort thus derive from the rights and obligations established by the contract."[25]

In *Lingle v. Norge Div. of Magic Chef, Inc*,[26] the Supreme Court addressed a claim that an employee had been discharged in retaliation for making a workers' compensation claim, an action which would have violated Illinois law. The Court of Appeals had determined that the claim was preempted by § 301, but the Supreme Court reversed. It held that the factual questions raised by the state law claim—whether the employee was discharged, and whether the discharge was motivated by the employer's desire to deter or impair the employee's pursuit of workers' compensation benefits—were factual questions, neither of which "requires a court to

---

[23]Complaint, doc. 1-1 at ¶ 18.

[24]471 U.S. 202 (1985).

[25]*Id*. at 217.

[26]486 U.S. 399 (1988).

-8-

interpret any term of a collective-bargaining agreement."[27] The Court explained that, "so long as the state-law claim can be resolved without interpreting the [collective bargaining] agreement, the claim is 'independent' of the agreement for §301 pre-emption purposes."[28] Even if a claim may be independent of a collective-bargaining-agreement in the abstract, defenses to the claim also must be considered. When the defenses depend on interpretation of the agreement, pre-emption exists.[29]

The question here is whether Riggs' age discrimination claim may be resolved without interpreting the CBA. Riggs argues that it can, because as he sees it, the only issue is whether Chugach denied him training and placement in a boiler operator position because of his age.

Assuming for the sake of discussion that Riggs could make out a *prima facie* case of age discrimination without reference to the CBA, the flaw in Riggs' position is that it overlooks the analytical framework which must be applied. Under Alaska law, an employer accused of discriminatory conduct in violation of AS 18.80.220 may rebut a plaintiff's prima facie case of discrimination by advancing a non-discriminatory reason for the employer's action.[30] Here, of course, Chugach contends that its actions do not reflect age discrimination; rather, the actions were taken in conformity with the requirements of the CBA. To evaluate Chugach's contention, the finder of fact would

---

[27]*Id.* at 407.

[28]*Id.* at 410.

[29]*Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1112 (9th Cir. 1999).

[30]*Thomas v. Anchorage Telephone Utility*, 741 P.2d 618, 623 (Alaska 1987).

-9-

necessarily have to delve into the meaning and proper application of the relevant provisions of the CBA. In such circumstances, the Ninth Circuit has explained that a discrimination claim is pre-empted by §301.[31]

### IV. CONCLUSION

For the reasons set out above, Chugach's motion for summary judgment at docket 11 is **GRANTED**. The Clerk of Court will please enter judgment for defendant.

DATED this 23rd day of June 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[31]*Audette*, 195 F.3d at 1113.